Luz and Luis MORALES, Plaintiffs,

v.

CROMPTON & KNOWLES CORPORATION, Defendant.

Civ. A. No. 93–5268.

United States District Court, E.D. Pennsylvania.

April 24, 1995.

Richard Jurewicz, Arthur Bugay, Galfand, Berger, Lurie & March, Philadelphia, PA, for plaintiffs.

Dean Murtagh, Daniel J. Divis, German, Gallagher & Murtagh, Philadelphia, PA, for defendant.

### MEMORANDUM

TROUTMAN, Senior District Judge.

The above-captioned action is a diversity case arising from an injury to the right index finger allegedly sustained by plaintiff Luz Morales in 1992 while operating a wrapping machine at her place of employment, the Warner–Lambert pharmaceuticals plant in Lititz, Lancaster County, Pennsylvania. To seek redress for the personal injuries suffered by Luz Morales as a result of the allegedly defective condition of the wrapping machine, plaintiffs have asserted claims sounding in negligence, strict liability and breach of warranty, as well as a claim for loss of consortium on behalf of Luis Morales.

The wrapping machine on which plaintiff was allegedly injured was manufactured and sold to Warner Lambert's predecessor by F.B. Redington Co. in 1959. In 1960, defendant Crompton & Knowles acquired Redington, dissolved the corporation as an independent entity and began operating Redington as a wholly-owned subsidiary which continued to manufacture Redington packaging machinery. In addition, defendant, through its Redington subsidiary, continued to sell spare parts and provide repair services to former Redington customers, as well as to new clients.

In 1976, Crompton & Knowles sold its packaging machinery business to a new entity, Redington, Inc., and has not since then manufactured, sold or serviced packaging machinery. Redington, Inc. was subsequently sold to Emhart Packaging which, in turn, sold the assets of the company to Acma of Richmond, VA, a company which apparently continues to manufacture automatic packaging machinery. (*See*, Defendant Crompton & Knowles Corporation's Motion for Summary Judgment, Doc. # 14, Exh. AC).

Presently before the Court are plaintiff's motion for partial summary judgment and defendant's motion for summary judgment, both based upon the issue of successor liability. Plaintiffs contend that, although defendant had not yet acquired Redington at the time the wrapping machine in question was manufactured and sold, and although defendant sold the packaging machinery business prior to the accident here involved, Crompton & Knowles may nevertheless be held liable for plaintiffs' injuries as the successor to F.B Redington, the acknowledged manufacturer of the product. Defendant correctly notes that liability for the torts of a predecessor entity is not ordinarily imposed upon a corporation which acquires the assets and business of another company, but acknowledges that there are several exceptions to the general rule. *See, Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981). In *Dawejko*, the Superior Court enumerated and described the traditional exceptions to imposition of tort liability upon a transferee corporation and adopted a new exception to the general rule of no liability for successor corporations, known as the product line exception, which is specifically applicable to strict liability claims. In adopting the product line exception, the Pennsylvania Superior Court followed the decision of the New Jersey Supreme Court in *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981), which was based upon the same public policy considerations underlying the law of strict liability in general.

In *Conway v. White Trucks,* 885 F.2d 90 (3rd Cir.1989), the Court of Appeals predicted that the Pennsylvania Supreme Court would agree with the Superior Court and adopt the *Dawejko* formulation of the product line exception to successor non-liability in the context of strict liability claims, provided that there was no possibility of a remedy against the predecessor corporation. Consequently, we are bound to apply the product line exception, if appropriate, in this case.

Although the parties to this action disagree with respect to whether any of the successor liability principles may be used to impose liability upon the defendant under the circumstances of this case, they appear to

agree that three such exceptions to the general rule of no liability, *i.e.*, merger, continuation and the product line exception, are potentially applicable.

In considering the earlier and more traditional exceptions, the inquiry focuses primarily on the formalities involved in combining two corporations and the resulting corporate form. To determine, *e.g.*, whether successor liability may be imposed on the basis of a merger, we look to whether one corporation absorbed another, which was then dissolved, leaving the acquiring corporation as the only remaining and viable entity. *Knapp v. North American Rockwell Corp.*, 506 F.2d 361 (3rd Cir.1974).

A continuation also requires the dissolution of the original corporation but, in effect, results in that corporation pursuing the same business under a new form. "In a continuation, a new corporation is formed to acquire the assets of an extant corporation, which then ceases to exist." *Knapp*, at 365. To determine whether one corporation is a continuation of another, we examine certain traditional indicia, *i.e.*, whether there is "a common identity of officers, directors and stock between the selling and purchasing corporations, and only one corporation after the transfer." *Dawejko*, 434 A.2d at 108.

On the other hand, the product line exception focuses on corporate activity rather than corporate form. *Dawejko; Conway.* In *Ramirez*, the product line exception was formulated as follows:

(W)here, one corporation acquires all or substantially all of the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

431 A.2d at 825.

As noted, plaintiff contends that the merger, continuation and product line exceptions all support imposition of liability upon defendant in this action, arguing, first, that

Crompton & Knowles acquired Redington by means of a stock for stock transfer, thereby rendering the transaction a de facto merger of the two corporations and supporting application of the merger exception.

Plaintiff further argues that after Redington was purchased by Crompton & Knowles, it operated essentially unchanged, supplying the same products and services with the same personnel as before the acquisition. Thus, plaintiff contends that such circumstances support the conclusion that the entry of Crompton & Knowles into the packaging machinery business was accomplished by simply continuing Redington's business.

Finally, plaintiff contends that the product line exception is here applicable in that Crompton & Knowles, through its Redington subsidiary, for a number of years manufactured, sold and serviced wrapping machines of the same design and with the same features found on the machine which allegedly caused plaintiff's injury.

In response and in support of its own motion for summary judgment, defendant asserts that plaintiff lacks the necessary evidence to establish one or more of the essential elements of either the merger or continuation exceptions. Moreover, defendant contends that its subsequent sale of all Redington-related assets relieves it of successor liability under the product line exception in that, since defendant no longer enjoys the benefits of its acquisition of the packaging machinery product line, it is inequitable and unjust to impose successor liability upon Crompton and Knowles under the product-line exception. Moreover, defendant argues that, because of its subsequent sale of the packaging machinery division, Crompton and Knowles is no longer able to perform the risk-spreading function underlying strict liability claims in general and the product line exception in particular.

Prior to considering the specific elements of the continuation and merger exceptions in light of the circumstances of defendant's acquisition and operation of Redington's packaging machinery business, as well as the parties' arguments concerning the fairness of applying the product line exception in this

action, the unique circumstances here present require that we first answer the threshold question whether any of the successor liability exceptions upon which plaintiff relies are applicable to an intermediate successor, *i.e.*, a corporation which acquired another business subsequent to the alleged conduct upon which plaintiffs' claims are based and completely divested itself of said business prior to the accident in which plaintiff was allegedly injured.[1]

■ With respect to the merger and continuation exceptions, we conclude that such bases for successor liability are abrogated when the successor corporation sells the previously acquired business prior to the occurrence of an injury arising out of such business. Assuming, *arguendo*, that the formalities of either or both of the merger and continuation exceptions had been observed at the time of the acquisition of F.B. Redington by Crompton & Knowles, it is nevertheless undisputed that, before the accident occurred, no vestige of the F.B. Redington business remained within the corporate structure of Crompton and Knowles. Moreover, Crompton and Knowles, from the time of its sale of F.B. Redington to Redington, Inc., has not been in the business of producing or servicing packaging machinery. Consequently, Crompton & Knowles was not, at the time of the accident, and is not now either the viable entity remaining after the corporate dissolution of F.B. Redington, or the continuation of F.B. Redington under a new corporate form. Thus, it makes no sense to impose liability under either the merger or continuation exceptions, which are so dependent upon the formalities of acquisition and the structure of the combined corporations where, as here, the "successor" retains nothing of the predecessor and, indeed, the combination of the two corporations was dissolved as a result of another transfer of assets before the injury at issue occurred.

■ A similar analysis of the product line exception yields the same result, notwithstanding such exception's focus upon corporate activity rather than corporate form. The public policy considerations underlying the development of the product line exception are based upon continuation of "the manufacturing operation of the predecessor." *Ramirez*, 431 A.2d at 820. Consequently, as a threshold matter, it follows that discontinuing such operation via a sale of the manufacturing assets to a later successor undermines the rationale for the product line exception, both in terms of the benefits accruing to the successor from continuation of the predecessor's product line and in terms of implementing the risk-spreading function underlying the principle of strict liability in general.

Nevertheless, we recognize that the product line exception is meant to have a broader application than the traditional successor liability exceptions and, therefore, that mechanical reliance upon the discontinuation of the acquired business alone may not be a proper application of the product line exception as adopted in *Dawejko* and *Conway*.

■ By the same token, however, proper application of the product line exception cannot be premised upon simply counting certain factors identified and used by various courts in determining whether the product line exception should be invoked to impose liability upon a successor corporation. As noted by the Pennsylvania Superior Court, although it "will always be pertinent" to consider, *e.g.*, whether the acquisition of the

---

1. We note that counsel has neither specifically addressed the underlying question whether successor liability can ever remain with an intermediate successor under any exception to the general non-liability rule, nor cited any case in which the unusual circumstances here present appear to have been involved. Moreover, the Court's own research has not uncovered a similar situation or a discussion of this issue.

We further note that, at first blush, a similar situation appears to have existed in *Ramirez*, since defendant, Amsted Industries, subsequently sold the division which had manufactured the machinery in question and which Amsted had acquired from a predecessor corporation. A crucial circumstance, however, distinguishes the instant case from *Ramirez*: when Amsted sold the product line, it agreed to indemnify its successor "for any losses arising out of the machinery manufactured and sold prior to the date of the closing." 431 A.2d at 815. Thus, by virtue of the indemnity agreement with its successor, Amsted retained the same degree of tort liability as a successor corporation that it would have had if it had not subsequently sold the business to another corporation.

original manufacturer by the successor resulted in the complete destruction of any remedy plaintiff may have had against the predecessor and whether a particular successor has the financial ability to assume the risk-spreading role inherent in strict liability principles, the "philosophical origin" of the product line exception demands that the primary inquiry be directed toward whether it is fair to impose liability on a particular defendant under the circumstances of a specific case. *Dawejko*, 434 A.2d at 106.

In examining the fairness of imposing strict liability upon defendant Crompton & Knowles under the circumstances of this case, we again begin with the undisputed facts that (1) defendant no longer manufactures packaging machinery; (2) defendant did not manufacture packaging machinery either at the time the wrapping machine in question was manufactured or at the time plaintiff Luz Morales was injured; (3) defendant discontinued that aspect of its business by means of a subsequent sale of the Redington division to another successor entity, Redington, Inc.

In light of these circumstances, the inquiry in this case centers on whether it is a fair application of the product line successor liability exception to permit an injured plaintiff the choice of pursuing a remedy against any viable corporate entity ever connected to a product which allegedly caused an injury. Plaintiffs appear to argue that such a choice on their part is permitted, or even mandated, by the product line exception since they contend that the fairness inquiry should include such factors as whether they can pursue their strict liability claim against a later successor; whether plaintiffs might be left without a strict liability remedy if they are not permitted to proceed against the intermediate successor defendant; and the relative fairness of imposing strict liability upon defendant and later successors, *i.e.*, whether the chosen defendant is in a better financial position to perform the risk-spreading function than later successors.

Plaintiffs also argue that the *Conway* court's conclusion that the product line exception is not applicable unless there is no possibility of a remedy against the entity which actually manufactured and sold an allegedly defective product must be extended or interpreted to mean that the existence of an intermediate successor relieves later successors of any potential strict liability claims. In effect, plaintiffs contend that, as long as an intermediate successor remains a viable entity, it stands in the shoes of its predecessor regardless of a subsequent sale of the manufacturing assets to another corporation.

Thus, plaintiffs implicitly argue that, having established that a connection once existed between defendant Crompton & Knowles and the wrapping machine which allegedly caused the injury in this action, and that Crompton & Knowles remains a viable entity which can afford to pay a judgment, they may pursue a remedy against Crompton & Knowles regardless of the fact that the machine was manufactured prior to defendant's acquisition of the product line and regardless of the circumstances which severed the connection between this defendant and the product in issue prior to the alleged injury. We cannot agree, however, that fairness requires the product line exception to be so broadly applied.

In the first instance, contrary to plaintiffs' argument, we do not believe that the *Conway* limitation on application of the product line exception, *i.e.*, that successor liability cannot be imposed unless there is no possibility of a remedy against the predecessor, likewise means that liability remains with the next successor as long as it remains a viable entity, regardless of any subsequent sale of the manufacturing assets. Rather, we conclude that the liability of a successor entity under the product line exception, logically, follows the product line. In other words, when the liability of the manufacturer of the product itself is destroyed, liability under the product line exception should be transferred to later successors with the product line. Such a rule is fairer than imposing liability arbitrarily upon the earliest viable successor and more closely adheres to the rationale underlying the product line exception, in that liability remains with the entity still deriving income from manufacturing the product line from which the injury arose. Moreover, by keeping successor liability with the product

line, the risk of injury may be spread over the purchasers of units within that product line.

The same logic applies and leads to the same conclusion if we examine the *Conway* interpretation of the product line exception in light of the fairness considerations which plaintiffs contend are relevant in this case. It is clear that under *Conway,* if Crompton & Knowles had manufactured the machine which allegedly caused the injury and subsequently sold that aspect of its business, it would retain its liability to plaintiffs as the predecessor regardless of the relative wealth of the corporations involved or of plaintiffs' ability to pursue Crompton & Knowles.

Moreover, if Crompton & Knowles were in the same position as an intermediate successor, but its predecessor in the packaging machinery business which had actually manufactured the wrapping machine remained a viable entity, there is no question that liability would remain with that entity, not Crompton & Knowles or any later successor, regardless of the relative abilities of the predecessor and various successors to pay the judgment, or whether plaintiffs were unable to pursue their claims against the predecessor because, *e.g.,* the statute of limitations expired before they learned of the continuing viability of the predecessor entity.

Just as clearly, where the product line has been passed along to a subsequent entity or entities which continued to produce the same product, whatever remedy plaintiffs may have should be pursued against the latest successor.

Although it may be that under the product line exception, Crompton & Knowles would have been subject to liability in this action had it simply discontinued rather than sold its Redington subsidiary, or if it had continued in the packaging machinery business, even if it no longer manufactured products similar to the wrapping machine at issue, we do not consider such possibilities relevant to the present inquiry since neither of those hypothetical situations occurred. Moreover, although plaintiffs may now be without a remedy against a later successor due to the statute of limitations, an intervening bankruptcy or other problems, such lack of a

remedy provides no reason to extend the principles of the product line exception far beyond its logical bounds. The lack of a remedy is not inherently unfair; plaintiffs are in no worse position than they would have been if F.B. Redington had simply discontinued its business rather than passing it on to Crompton & Knowles, which, in turn, passed it to another entity, which passed it to still another company. The general rule, after all, is that successors are not ordinarily liable for the torts of their predecessors. Extending the product line exception as plaintiffs would have us do in this case would result in a new and far broader rule of strict liability based upon the existence of any viable defendant which ever had any connection to an allegedly defective product. Consequently, in the context of a products liability action, successor liability would be the rule rather than the exception.

In summary, we find no direct support for imposing liability upon Crompton & Knowles under the circumstances of this case either in the current law of Pennsylvania relating to the product line exception or in the prediction by the Court of Appeals concerning how the Pennsylvania Supreme Court will apply the product line exception. Moreover, we conclude that imposing liability upon Crompton & Knowles as a successor corporation when it had sold the manufacturing assets of its predecessor long before the occurrence of the accident for which plaintiffs now seek compensation is not supportable under either the merger or continuation successor liability exceptions and is not a fair application of the product line exception. For these reasons, therefore, we will deny plaintiffs' motion for partial summary judgment, grant defendant's motion for summary judgment and enter judgment in favor of defendant Crompton & Knowles.

### *ORDER*

And now, this 24th day of April, 1995, upon consideration of Plaintiffs' Motion for Partial Summary Judgment (Doc. # 11), and defendant's response thereto and Motion for Summary Judgment, (Doc. # 14), **IT IS HEREBY ORDERED** that plaintiffs' motion is

DENIED and defendant's motion is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in favor of the defendant, Crompton & Knowles Corporation, and against the plaintiffs, Luz and Luis Morales.